UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| QUAKE GLOBAL, INC., a California corporation,<br><br>　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>MARK KOSLOSKI, an individual; SECURENETMD, LLC, et al.,<br><br>　　　　　　　　　　Defendants. | Case No.:  20-cv-02468-DMS-JLB<br><br>**ORDER ON THIRD PARTY INTERVENOR WATERMARK RETIREMENT COMMUNITIES, LLC'S MOTION TO INTERVENE TO MODIFY PROTECTIVE ORDER**<br><br>**[ECF No. 64]** |

Before the Court is third party Intervenor Watermark Retirement Communities, LLC's Motion to Intervene to Modify Protective Order.  (ECF No. 64, the "Motion.") Watermark Retirement Communities, LLC ("Watermark") is the defendant in a lawsuit currently pending in San Diego Superior Court against Quake Global, Inc. (*See* ECF No. 64-4; *Quake Global, Inc. v. Watermark Retirement Communities, LLC*, Case No. 37-2022-00001487-CU-BT-CTL.)  Watermark now moves to intervene in the instant case to request that this Court modify the Protective Order (ECF No. 14) that remains in effect.  Plaintiff and Defendants, Mark Kosloski and SecureNetMD, LLC, do not oppose the Motion.  (ECF Nos. 68; 69.)  Having considered the matter on the papers and without oral argument in

accordance with Civil Local Rule 7.1(d)(1), Watermark's Motion (ECF No. 64) is **GRANTED**.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

### A. The Instant Case

On November 6, 2020, Plaintiff Quake Global, Inc. ("Plaintiff") filed an action in San Diego Superior Court against Defendants Mark Kosloski and SecureNetMD, LLC (collectively, "Defendants"). (ECF Nos. 1 at 2 ¶ 1; 1-2 at 38.) Plaintiff's complaint brought multiple counts against Defendants, including a violation of the Computer Fraud and Abuse Act (18 U.S.C. § 1030); a violation of California Penal Code § 502; a violation of the Uniform Trade Secrets Act; a violation of the Defend Trade Secrets Act; breach of fiduciary duty; unfair business practices; common law misappropriation; and breach of contract. (ECF No. 1-2 at 38.)

Plaintiff's complaint alleged that it provided Real Time Location System ("RTLS") products to senior living communities and "[a]mong the customers . . . was a large developer and owner of senior living communities located throughout the United States, including in Southern California." (ECF No. 1-2 at 9 ¶ 8.) Plaintiff's complaint also claimed that Defendant Kosloski, prior to his termination from employment with Plaintiff, "accepted employment with [Defendant SecureNet] and surreptitiously traveled out of state to meet with a Community Developer manager he knew from his employment with [Plaintiff]." (*Id.* ¶ 13.) Plaintiff further alleged that Defendant "Kosloski solicited and obtained low voltage cable installation work for [Defendant SecureNet] on multiple Community Developer projects" and was "acting as consultant and low voltage project manager to Community Developer for existing and future Community Developer projects." (*Id.* ¶¶ 13–14.)

On December 18, 2020, Defendants filed a Notice of Removal of Plaintiff's state court action to this Court. (*See* ECF No. 1.)

During the discovery process, the parties filed a Joint Motion for Protective Order. (ECF No. 13.) The Court granted the parties' motion and entered a stipulated protective

ase 3:20-cv-02468-DMS-JLB   Document 70   Filed 04/12/22   PageID.1641   Page 3 of 8

order "to facilitate the exchange of information and documents that are normally kept confidential." (ECF No. 14 at 1, the "Protective Order.") Accordingly, neither Plaintiff nor Defendants could disclose covered documents without observing the terms of the Protective Order. Watermark was not a party to the Protective Order.

On September 24, 2021, Defendants filed a Motion for Summary Judgment, or alternatively, Summary Adjudication. (ECF No. 28.) On September 27, 2021, Magistrate Judge Jill L. Burkhardt held a Mandatory Settlement Conference with Plaintiff and Defendants. (ECF No. 29.) The case did not settle. (*Id.*) However, at the continued Mandatory Settlement Conference on November 1, 2021, Judge Burkhardt made a mediator's proposal. (ECF No. 34.) On November 2, 2021, the parties informed Judge Burkhardt that they had agreed to a modified version of the mediator's proposal. (ECF No. 35.) Accordingly, the case settled, and the parties filed a Joint Motion for Dismissal on December 30, 2021. (ECF No. 60.) On January 3, 2022, District Judge Dana M. Sabraw granted the parties' Joint Motion for Dismissal with prejudice, which closed the case. (ECF No. 62.)

**B. The Case in San Diego Superior Court**

On January 12, 2022, Plaintiff filed a lawsuit against Watermark in San Diego Superior Court, captioned *Quake Global, Inc. v. WatermarkRetirement Communities, LLC*, Case No. 37-2022-00001487-CU-BT-CTL. (*See* ECF No. 64-4 at 2–24.) Plaintiff's state court complaint brings multiple counts against Watermark, including a violation of the Computer Fraud and Abuse Act (18 U.S.C. § 1030); a violation of California Penal Code § 502; breach of fiduciary duty; intentional interference with prospective economic advantage; negligent interference with prospective economic advantage; defamation *per se*; false light; and breach of contract. (ECF No. 64-4 at 10–22.) Notably, Plaintiff claims that "Watermark's directors coordinated with [Defendant] Kosloski to interfere in [Plaintiff]'s business relationships with developers of senior living community projects and its contracts to install and integrate [Plaintiff]'s RTLS products in the communities. (ECF No. 64-1 at 2.)

3

## II. DISCUSSION

### A. Permissive Intervention

"On timely motion, the court may permit anyone to intervene who . . . (B) has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(b). Third parties seeking access to a judicial record or modification of a protective order in a civil case may do so by seeking permissive intervention under Rule 24(b). *San Jose Mercury News, Inc. v. Dist. Ct*., 187 F.3d 1096, 1100 (9th Cir. 1999); *Beckman Indus. v. Int'l Ins. Co*., 966 F.2d 470, 473 (9th Cir. 1992) (approving permissive intervention as a method for challenging protective order under Rule 26(c)).

Generally, permissive intervention under Rule 24(b) requires "(1) an independent ground for jurisdiction; (2) a timely motion; and (3) a common question of law and fact between the movant's claim or defense and the main action." *Beckman*, 966 F.2d at 473. A motion for permissive intervention is directed to the sound discretion of the district court. *Beckman*, 966 F.2d at 472.

Watermark "does not seek to intervene on the merits" of the instant case "or its settlement." (ECF No. 64-1 at 8.) Accordingly, an independent ground for jurisdiction and a common question of law and fact are not required here because Watermark merely seeks to challenge the protective order in this case. *Beckman*, 966 F.2d at 473–74 (reasoning independent jurisdictional grounds and strong nexus of fact or law unnecessary because party seeks to intervene only for the purpose of modifying a protective order and district court retained the power to do so).

In regard to timeliness, this requirement "has . . . been interpreted broadly in the context of modifying protective orders." *Starline Windows Inc., et al. v. Quanex Building Products Corp.*, No. 15-CV-1282-L (WVG), 2016 WL 4485559, at *2 (S.D. Cal. June 10, 2016) (citing *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 779 (3d Cir. 1994) (noting a "growing consensus among the courts of appeals that intervention to challenge confidentiality orders may take place long after a case has been terminated.")). Thus, the Court finds that Watermark's Motion was timely filed, and permissive intervention is the

appropriate method by which to challenge the Protective Order. Therefore, the Court **GRANTS** Watermark's motion to intervene.

### B. Access to Sealed Documents

The Ninth Circuit strongly favors access to discovery materials to meet the needs of parties engaged in pending collateral litigation. *Beckman*, 966 F.2d at 475. "Allowing the fruits of one litigation to facilitate preparation in other cases advances the interests of judicial economy by avoiding the wasteful duplication of discovery." *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1131 (9th Cir. 2003); *Beckman*, 966 F.2d at 475; *see also United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1428 (10th Cir. 1990); *Wilk v. Am. Med. Ass'n*, 635 F.2d 1295, 1299 (7th Cir. 1980) ("[W]here an appropriate modification of a protective order can place private litigants in a position they would otherwise reach only after repetition of another's discovery, such modification can be denied only where it would tangibly prejudice substantial rights of the party opposing modification."). So long as "reasonable restrictions on collateral disclosure will continue to protect an affected party's legitimate interests in privacy, a collateral litigant's request to the issuing court to modify an otherwise proper protective order so that collateral litigants are not precluded from obtaining relevant material should normally be granted." *Foltz*, 331 F.3d at 1132 (citing *Beckman*, 966 F.2d at 475).

That being said, modification of a protective order will not be automatically granted. Collateral litigants will not be allowed access to discovery materials merely as a means to subvert the limitations of the discovery process in the collateral litigation. *Id.* Collateral litigants—such as Watermark—seeking to modify a protective order must demonstrate the relevance of the protected discovery to the collateral litigation and its general discoverability in that case. *Id.* Once a relevance determination has been made, the court that issued the protective order must weigh the policy of avoiding duplicative discovery against the countervailing reliance interest of the party opposing modification. *Id.* at 1133.

///

///

### 1. Relevance Analysis[1]

The court that issued the protective order should confirm that the protected discovery is sufficiently relevant to the collateral litigation such that "a substantial amount of duplicative discovery will be avoided by modifying the protective order." *Foltz*, 331 F.3d at 1132. Such a determination depends on the "degree of overlap in the facts, parties, and issues between the suit covered by the protective order and the collateral proceedings." *Id.* This is to be a rough estimate; the issuing court is not to embroil itself in the specific discovery disputes applicable only to the collateral suit by deciding whether the collateral litigants will actually obtain the materials. *Id.* at 1133–34 (citing *United Nuclear*, 905 F.2d at 1428).

Here, Watermark contends that it is engaged in litigation in San Diego Superior Court against Plaintiff with issues substantially similar to those involved in the instant case. (ECF No. 64-1 at 2.) In the instant case, "Plaintiff claimed Defendant Mark Kosloski disseminated confidential information regarding Plaintiff's [RTLS products] used in the healthcare industry after his employment with Plaintiff ended." (*Id.*) Moreover, Plaintiff alleged that Defendant "Kosloski solicited and obtained low voltage cable installation work for [Defendant SecureNet] on multiple Community Developer projects" and was "acting as consultant and low voltage project manager to Community Developer for existing and future community developer projects." (*Id.* at 10; ECF No. 1-2 at 2 ¶¶ 13–14.) In the present Motion, Watermark alleges that it is the unnamed "Community Developer" mentioned in Plaintiff's case before this Court. (ECF No. 64-1 at 10.)

In the collateral litigation in San Diego Superior Court, Watermark states that Plaintiff accuses its directors of "coordinat[ing] with [Defendant] Kosloski to interfere in

---

[1] This Court's relevance assessment is limited to the context of modifying the Protective Order in this case—not generally deciding whether this or future requested discovery is admissible in the litigation pending in San Diego Superior Court. That determination is wholly separate and will be made, if necessary, by that court.


[Plaintiff's] business relationships with developers of senior living community projects and its contracts to install and integrate [Plaintiff's] RTLS products in the communities." (*Id.* at 2.)

Watermark moved to modify this Court's Protective Order to permit access to the instant case's discovery materials for use in the collateral litigation, due to shared facts and law between the cases. (ECF. No. 64-1 at 4–7.) Plaintiff and Defendants do not oppose Watermark's Motion. (ECF Nos. 68; 69.) Accordingly, the Court finds that Watermark has offered a sufficient basis to find a rough estimate of relevance such that duplicative discovery may be avoided. The court overseeing the collateral litigation can settle any disputes as to whether particular documents are admissible in that litigation.

**2. Reliance Interest**

Once a relevance determination has been made, the court that issued the protective order must weigh the policy of avoiding duplicative discovery against the countervailing reliance interest of the party opposing modification. *Foltz*, 331 F.2d at 1133. "[R]eliance will be less with a blanket [protective] order, because it is by nature overinclusive." *Beckman*, 966 F.2d at 476. This is because a party seeking protection of the court by means of a blanket protective order typically does not make the required Rule 26(c) "good cause" showing for any particular documents. *Id*. In such a case, "[a]ny legitimate interest . . . in continued secrecy as against the public at large can be accommodated by placing [the collateral litigants] under the same restrictions on use and disclosure contained in the original protective order." *United Nuclear*, 905 F.2d at 1428; *see also Beckman*, 966 F.2d at 476.

As stated above, Plaintiff and Defendants do not oppose Watermark's Motion. (ECF Nos. 68; 69.) As such, this Court finds it unnecessary to engage in any further analysis of Plaintiff and Defendants' potential reliance interests.

### III.   CONCLUSION

For the foregoing reasons, Watermark is **GRANTED** intervention in the above-entitled action. Further, Watermark is **GRANTED** access to non-privileged, non-

settlement-protected sealed filings, exhibits and discovery in the above-entitled action, subject to the Protective Order signed March 12, 2021 (ECF No. 14) in support of its defense in the state court action pending in San Diego Superior Court between Watermark and Plaintiff, captioned *Quake Global, Inc. v. Watermark Retirement Communities, LLC*, Case No. 37-2022-00001487-CU-BT-CTL.  Watermark is not entitled to privileged filings, as well as accompanying documents and orders containing privileged material, contained in ECF Nos. 42 through 58.  Moreover, Watermark is not entitled to settlement-protected documents or communications between the parties in the above-entitled action, including but not limited to communications made during the Mandatory Settlement Conference, contained in ECF Nos. 42 through 58.  This Order is conditioned on the filing of a protective order in the collateral case and in no way limits the collateral court's ability to decide whether the discovery listed above will be admissible in that litigation.

**IT IS SO ORDERED.**

Dated:  April 12, 2022

_____
Hon. Jill L. Burkhardt
United States Magistrate Judge